# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **PAMELA SUTTON,** | CASE NO. 3:21 CV 962 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS,** | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

## INTRODUCTION

This case arises out of Plaintiff Pamela Sutton's ("Sutton") claim that her current employer, Defendant Ohio Department of Rehabilitation and Corrections ("ODRC"), committed reverse race discrimination and retaliation against her, and created a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* Jurisdiction is proper under 28 U.S.C. § 1331. The matter now before the Court is Defendant's Motion for Summary Judgment (Doc. 14). Plaintiff opposed (Doc. 18), and Defendant replied (Doc. 19). For the reasons set forth below, Defendant's Motion (Doc. 14) is granted.

## BACKGROUND

Viewing the facts in the light most favorable to Plaintiff, the background of this case is as follows:

Parties Involved

Plaintiff Sutton, a Caucasian woman (Sutton Depo., at 59)[1], is a special education intervention specialist working for Defendant ODRC. *Id*. at 28. In this role, she works with teaching staff to assist with the instruction of inmates who have learning disabilities and behavior disorders, diagnoses the individual needs of students, including the development of individualized education plans ("IEP"), and conducts counseling pertinent to the learning and educational program. (Doc. 15-1). Sutton works at three Defendant facilities, Allen-Oakwood Correctional Institution ("AOCI"), Toledo Correctional Institution ("TOCI"), and Lorain Correctional Institution ("LOCI"); AOCI is her primary location. (Doc. 18-1, at 1). Plaintiff has held this position since 2014, and the events underlying this action arise out of allegations of discrimination and retaliation while in this role. *See generally*, Doc. 1.

Initial Incidents and 2015 EEO Mediation

The allegations of discrimination and retaliation are based upon interactions between Sutton and her immediate supervisor, Angela Dartis ("Dartis"), an African American woman. *See generally*, Doc. 1; Sutton Depo., at 31. Initially, the working relationship between Sutton and Dartis was "okay." (Sutton Depo., at 33). Sutton began "having problems in the fall of 2014" that carried over into 2015. *Id*. Sutton testified that, at that time, Dartis was not allowing her adequate time to test or work with her students. *Id*. at 34-35. Dartis, citing Sutton's failure to track "red flag students" per policy, along with her failure to utilize the proper chain of command for communication, filed two corrective counseling reports against Sutton in June of 2015. (Doc. 18-2). The increasingly strained relationship between Sutton and Dartis resulted in a complaint by

---

1. Sutton's Deposition is located at ECF Doc. 15.

Sutton to Defendant's Equal Employment Office which was resolved by mediation on August 13, 2015. (Doc. 15-2).

The mediation agreement provided for Dartis to remove the two corrective counseling reports concerning Sutton from the supervisor's file, for future IEP discussions to take place via telephone if needed, and for Sutton to complete training for various administrative tasks. *Id*. Additionally, a distribution list was created for Sutton to use for the purpose of submitting her schedule for approval. *Id*. In exchange, Sutton agreed to withdraw her EEO complaint. *Id*.

In October 2015, Sutton filed an incident report with Defendant claiming workplace violence after a weekly meeting in Dartis' office. (Doc. 18-3). This meeting, which took place on October 5, involved a third party: the AOCI guidance counselor. Sutton stated she thought the behavior of Dartis and the guidance counselor during this meeting "was unprofessional" and she felt "threatened, intimidated, and embarrassed" by the presence of a third party. *Id*.

Early in 2016, Defendant changed the supervisory structure over Sutton. In a letter, Trent Patterson, the Assistant Superintendent of the Ohio Central School System (the school district operated by Defendant, "OCSS"), stated that "effective January 4, 2016; Pam Sutton, Intervention Specialist for OCSS, will report directly to Michelle McCollister, OCSS Professional Development Director. . . . This will be effective until further notice." (Doc. 15-3). This change in supervision for Sutton was further refined by an email dated January 19, 2016 from Patterson to multiple ODRC employees, including Sutton, Dartis, and McCollister. This email laid out Patterson's expectations for how and to whom Sutton would report her various job responsibilities. (Doc. 15-4). At the end of the message, Patterson reiterated that the arrangement was temporary, and that the situation "will revert to Pam [Sutton] reporting directly to Principal, Ms. Dartis, upon resolving the complaints and allegations that are pending." *Id*.

3

As a result, Sutton was under the direct supervision of Michelle McCollister, a Caucasian female, starting in January 2016. (Sutton Depo., at 84). During this time, Sutton filed no complaints regarding interactions with her supervisor. Additionally, three of Sutton's evaluations from that period (2015/16, 2016/17, and 2018/19 – all of which are signed by McCollister) indicate that Sutton never rated below the level of "meets expectations." (Doc. 18-4).

2019-20 Performance Evaluation and Subsequent Review

In August 2019, direct supervision of Sutton reverted to Dartis. (Doc. 18-6, at 2; Sutton Depo., at 47). Sutton testified that when this occurred, she "expressed [her] concern" to the OCSS superintendent, Jennifer Sanders. (Sutton Depo., at 47). She was informed that because "there wasn't enough paperwork to defend" Dartis' previous removal as her supervisor, the pre-2016 status quo would be restored. *Id*.; *see also* Smith Depo., at 45-46[2].

On March 3, 2020, Dartis completed her first evaluation of Sutton after being returned to her supervisory role. This evaluation included summary scores in two overarching areas: position-based competencies and goals and performance expectations. For both of these categorical scores, as well as the overall performance rating, Dartis scored Sutton as "needs improvement." (Doc. 16-5, at 2-3). In response, Sutton initiated the available review process. (Doc. 15-6). In her review request, Sutton noted that "Ms. Dartis has never held a meeting with me expressing her concerns with communications. She's never explained her expectations to me or that she was displeased." *Id*. at 1. Additionally, Sutton stated Dartis was "using the Incident Reports that I have written against her . . . as evidence in my evaluation. She is retaliating against me for writing reports for workplace violence." *Id*. at 2.

---

2. Smith's Deposition is located at ECF Doc. 16.

The review of Sutton's 2019/20 performance evaluation resulted in the raising of the categorical scores to "meets expectations." *Id*. at 3. Cori Smith, the Deputy Warden for Special Services at AOCI, noted in the review that "[t]here was no documentation to show Ms. Sutton was made aware of any performance concerns prior to this evaluation[.]" *Id*. Smith did not address Sutton's allegations in her review request regarding Dartis' retaliatory motive. *Id*.

OCRC Charge Filed, 2020 Incident Reports

On July 2, 2020, Sutton filed a charge of discrimination with the Ohio Civil Rights Commission. (Doc. 18-6). In this charge, Sutton cited the 2015 EEO complaint she filed against Dartis which ultimately led to the change in supervision discussed above. *Id*. at 2. Sutton noted Dartis' return to a supervisory role over her, Sutton's own "several Work Place [sic] Violence complaints," and Dartis' poor 2019/20 evaluation of Sutton as evidence of ongoing discrimination. *Id*. Ultimately, Sutton asserted she believed Dartis was "retaliating against [her] for the previous EEO and [Dartis'] removal as my supervisor." *Id*.

In the months that followed this charge, a flurry of Incident Reports passed between Sutton and Dartis. On August 5, 2020, Dartis authored two incident reports against Sutton: one for failing to follow the proper call-off procedure and one for failing to submit a request for leave pursuant to policy. (Doc. 18-7). Sutton seemingly disputes the validity of the allegations in one incident report. *See* Sutton Depo., at 102 ("I didn't put [the sick request] in right when I came back, but put it in before the pay period was over, which is what you're supposed to do."). On August 13, 2020, Sutton filed an incident report against Dartis stating Dartis was abusing her investigatory powers: "Ms. Dartis has made this a common practice with me in the past by writing me up and conducting her own investigations and then she does not turn the paperwork in." (Doc. 16-8). On September 18, 2020, Dartis filed an incident report wherein she claimed

Sutton did not complete a necessary task to support an ongoing audit of the special education files. (Doc. 17-3). On October 14, 2020, Sutton filed an incident report against Dartis claiming workplace violence and an equal employment violation. (Doc. 15-7). Sutton asserted she was "treated differently because of [her] protected class." *Id.* at 1. Moreover, she stated the conduct was "causing [her] emotional harm and trauma, as [Dartis] has called [her] a staff-splitter and instructed staff not to talk to [her] and relayed to them that they are being treated differently due to their association with [her]." *Id.* Sutton further asserted Dartis had filed the incident reports as retaliation for her EEO complaints and "this is not the way she treats other educators in similar situations". *Id.* Each of the three incident reports Dartis filed against Sutton resulted in a "Q&A session", but not in discipline. *See* Sutton Depo., at 57, 60, 76.

Early 2021

In March 2021, Dartis completed Sutton's annual evaluation. (Doc. 15-8). She scored Sutton at "meets expectations" for all categories. *See id.* Sutton did not challenge this evaluation. However, on May 3, 2021, she filed an incident report against Dartis, once again claiming workplace violence. (Doc. 15-9). Sutton cited Dartis' denial of "consideration for extra time for testing/report writing, etc." as retaliation for earlier reports. *See id*. at 1 (stating Dartis was "creating a situation where I cannot be successful. . . . This is retaliation for the EEO I have filed against her.").

On May 21, 2021, Dartis completed an incident report stating that Sutton had not completed a requested draft IEP. (Doc. 18-9). Sutton testified that no supervisor or principal other than Dartis had ever asked her for a draft IEP before and Dartis had only requested it once before. (Sutton Depo., at 78-82). This incident report resulted in a notice of written reprimand. (Doc. 15-13).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Sutton alleges Defendant discriminated against her based upon her race in violation of Title VII. Sutton further alleges she was and continues to be a victim of retaliation for engaging in protected activity in response to Defendant's alleged discriminatory conduct. Finally, Sutton claims the whole of Defendant's conduct has created a hostile work environment. For the reasons discussed below, the Court finds Defendant is entitled to summary judgment on each claim.

<u>Reverse Race Discrimination</u>

In her first cause of action, Sutton alleges reverse race discrimination under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e, *et seq*. (Doc. 1, at 5). When a plaintiff is unable to establish direct evidence of discrimination, they must avail themselves of the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), thereby using circumstantial evidence to establish a prima facie case for discrimination. To meet this burden, a plaintiff must point to evidence that shows (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she is qualified for the position she currently holds, and (4) she was treated differently than similarly situated employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

"The Sixth Circuit has adapted this framework in cases alleging reverse-race discrimination, requiring that plaintiffs establish the first prong of a prima facie case by showing 'background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Goller v. Ohio Dep't Rehab. & Corr.*, 285 F. App'x 250, 255 (6th Cir. 2008) (quoting *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002)). Sutton, therefore, must establish her first claim based upon this modified *McDonnell Douglas* framework. Beyond the added burden for the first prong, "[t]he second and third prongs remain familiar: that [she] was qualified for the job and suffered an adverse employment action, respectively. . . . Under the fourth prong, '[she] must show that the defendant employer treated differently similarly situated employees of a different race.'" *Goller*, 285 F. App'x at 255 (quoting *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)). Defendant, in its brief in support of the motion for summary judgment, does not challenge Sutton's qualification for her

position or her treatment compared to similarly situated employees, and makes only a cursory challenge to the question of Sutton's racially-protected status. (Doc. 14-1, at 10).[3]

*Adverse Employment Action*

The parties focus their arguments on whether Sutton has suffered an adverse employment action sufficient to satisfy the modified *McDonnell Douglas* framework. When considering substantive discriminatory conduct, a plaintiff suffers an adverse employment action in the following circumstances:

> (1) a termination of employment; (2) a demotion resulting in loss of benefits or salary reduction; (3) conferring of a less distinguished title; (4) a material loss of benefits; (5) significantly diminished material responsibilities; or (6) other factors unique to the particular situation.

*Jones v. Butler Metro. Hous. Auth.*, 40 F. App'x 131, 136 (6th Cir. 2002) (citing *Kocis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886-87 (6th Cir. 1996)). Furthermore, and of particular guidance to the instant case, "a written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action." *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 566 (6th Cir. 2012).

Sutton's claims of adverse employment actions are rooted in a litany of varied conduct undertaken by Dartis for more than seven years. This conduct can be distilled to three types of

---

3. In its brief in support of the Motion for Summary Judgment, Defendant notes "Sutton may very well not meet the first prong of the modified reverse race discrimination prima facie case because only [AOCI] Warden Edward Sheldon (Caucasian) has the authority to discipline or discharge [AOCI] employees." (Doc. 14-1, at 10). Defendant, however, chooses to "not belabor the argument because Sutton cannot establish . . . [that] she has [] sustained an adverse employment action." *Id.* Sutton, in a footnote in her opposition brief, responds to this by asserting that the cat's paw theory establishes her protected status. (Doc. 18, at 14, n.1). Based upon the parties' arguments, the Court will focus solely on the question of whether Sutton suffered an adverse employment action as a result of Dartis' conduct.

action: clerical, investigatory, and personal. As discussed below, even viewing the evidence in the light most favorable to Sutton, none rises to the level of adverse employment action.[4]

Sutton claims Defendant, through Dartis, discriminated against her on the basis of her race when Dartis' actions "impair[ed] [her] from doing [her] job." (Sutton Depo., at 62). Examples given for this allegation focus upon Dartis' failure to allow Sutton to set her work schedule as needed to properly serve her students. Sutton cites Dartis not approving her work schedule following the August 2015 mediation which required Dartis to do so (*id*. at 39), and Dartis' more recent lack of consideration for the extra time Sutton believed she needed for testing and creating reports (Doc. 15-9, at 1). Sutton, however, has not established that the complained-of conduct rises to the level of an adverse employment action. Even construing the facts in the light most favorable to Sutton, it remains that her pay, title, and job duties have not changed as a result of Dartis' conduct. Furthermore, the Sixth Circuit has held that, "teaching a normal course load, within normal working hours, with no showing of special harm" does not qualify as an adverse employment action. *Kubik v. Cent. Mich. Univ. Bd. of Trs.*, 717 F. App'x 577, 583 (6th Cir. 2017); *see also*, *e.g.*, *Johnson v. United Parcel Serv., Inc.*, 117 F. App'x 444, 450 (6th Cir. 2004) (holding that changes in an employee's schedule, "absent changes in salary

---

4. Section E of Sutton's opposition brief cites specific ongoing acts as evidence Dartis "[c]ontinues to [p]unish Sutton [b]ased on Sutton's [r]ace." (Doc. 18, at 12-13). The entirety of the conduct cited in this section occurred after the August 1, 2022 discovery deadline in this case and was therefore not cited in the Complaint. *See* Minute Entry of March 23, 2022, Telephone Conference; Doc. 1.. However, Sutton never moved for leave to amend her complaint, in accordance with Rule 15(a)(2) of the Federal Rules of Civil Procedure, to include these most recent occurrences. Defendant objects to their consideration on this basis. *See* Doc. 19, at 10 n.2. Sutton's use of her opposition brief to introduce new facts to support these claims falls afoul of the accepted standard of fairness. *Hubbard v. Select Portfolio Servicing, Inc.* 2017 WL 3725475 at *3 (E.D. Mich.) ("[Plaintiff] cannot amend his complaint, which is the operative pleading in this matter, by simply including new factual allegations in his briefing in opposition to the motions for summary judgment."). Therefore, the Court declines to consider these new factual allegations.

or the number of hours of work . . . would not normally classify as potential adverse employment actions[]"); *Broska v. Henderson*, 70 F. App'x 262, 267 (6th Cir. 2003) (holding that allegations, which included defendant's singling out plaintiff for "intense supervision and criticism" did not rise to adverse employment action, because plaintiff "ha[d] not been terminated or demoted, or had his pay reduced, benefits lessened, or responsibilities diminished[]"). Interference of the kind described by Sutton, however inconvenient, does not fall within the scope of adverse employment action under Title VII.

Sutton further asserts that she has previously suffered and continues to suffer adverse employment actions as a result of Dartis' investigatory conduct. This conduct included the creation of various "incident reports" (Doc. 15-7, at 1), the administration of "corrective counseling" (Sutton Depo., at 41), and the filing of a negative annual review (Doc. 16-5). Sutton herself testified that, while the ultimate result from an incident report could be discipline, the creation of an incident report is not discipline *per se*. (Sutton Depo., at 65). Furthermore, Cori Smith, the Deputy Warden of Special Services at AOCI during much of the time when the alleged conduct occurred, attested "Sutton ha[d] not received any discipline" while Smith was serving in that capacity. (Doc. 16-6, at 2). Smith confirmed in her deposition that she was unaware of any discipline taken against Sutton up until May 22, 2022, when Smith transferred out of the Deputy Warden post. (Smith Depo., at 73-74).

These examples of investigatory employer conduct, *i.e.*, incident reports that do not result in formal discipline, do not rise to the level of adverse employment action. *See Creggett*, 491 F. App'x at 566. Furthermore, Sutton continues to be employed by Defendant in the same position she has held since 2014. She has not suffered a loss of pay. She has not been demoted in title or experienced a reduction in material responsibilities. Thus, Sutton has not provided evidence to

create a genuine issue of material fact that Defendant's investigatory conduct resulted in an adverse employment action.

Sutton also asserts Dartis, through her conduct, attempted to "intimidate" Sutton. (Doc. 18-3). This specific allegation is linked to the meeting on October 5, 2015, wherein a third party was present and taking notes during the session. However, Sutton does not provide evidence of any substantive employment action that resulted from this corrective counseling session. In fact, Sutton testified that, because of that particular investigation, "[Defendant] took [Dartis] away as my supervisor." (Sutton Depo., at 40). The only substantive result from this allegedly intimidating encounter was a change to Dartis' material responsibilities, not Sutton's.

Sutton asserts the record demonstrates conduct sufficient to satisfy the adverse employment action prong of the modified *McDonnell Douglas* framework. However, what the record actually provides is, in effect, a collection of unpleasant conduct between an employee and a supervisor – none of which rises to the level of adverse employment action. Simply put, although this Court does not doubt the challenging nature of the working relationship between Sutton and Dartis, and that therefrom Sutton has suffered considerable frustration with her job, she points to nothing in the record to establish she suffered an adverse employment action as defined by federal law. Therefore, having failed to meet the burden of establishing a prima facie case under the modified *McDonnell Douglas* framework, Sutton's cause of action for reverse race discrimination cannot survive summary judgment.

Retaliation

Sutton also alleges retaliation in violation of Title VII. (Doc. 1, at 6). "When an employee alleges that an employer has both discriminated and retaliated against [her] in violation of Title VII, the district court must analyze these claims separately under Title VII, as the elements (and

standards) of each claim are distinct." *Laster v. City of Kalamazoo*, 746 F.3d 714, 732 (6th Cir. 2014). Sutton asserts she participated in protected activity by filing incident reports and EEO complaints with Defendant concerning Dartis' conduct. She further asserts that, as a result of this participation in protected activity, she has suffered and continues to suffer adverse actions.

To establish a prima facie showing of retaliation in violation of Title VII, a plaintiff must establish that "(1) [she] engaged in activity protected by Title VII; (2) [her] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to [her] and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster*, 746 F.3d at 730 (quoting *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007)). Once again, a burden shifting framework is employed, wherein after the plaintiff establishes a prima facie case, "the burden shifts to the employer to articulate a 'legitimate, nondiscriminatory reason for its actions.'" *Laughlin v. City of Cleveland*, 633 F. App'x 312, 315 (6th Cir. 2015) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008)). Should the employer succeed in this showing, the plaintiff then has the burden to show that the employer's proffered reason was mere pretext. *Laughlin*, 633 F. App'x at 315.

Defendant concedes Sutton satisfies the first prong of the prima facie retaliation claim. (Doc. 14-1, at 10). Sutton points to the mediation agreement, signed by herself and Defendant, as evidence of Defendant's awareness of Sutton's participation in a protected activity sufficient to satisfy the second prong. (Doc. 15-2). Defendant presents no argument concerning the fourth prong (causation); for the purpose of summary judgment, Sutton has no reciprocal duty to address this point. The Court therefore focuses on the third prong: whether Sutton has

13

established a question of fact regarding a materially adverse action for purposes of a retaliation claim.

*Materially Adverse Action*

Following *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the scope of conduct forbidden by 42 U.S.C. §§ 2000e *et seq.* differs depending upon the cause of action. The difference is rooted in the policy underlying each part of Title VII: "[t]he substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct." *Burlington N.*, 548 U.S. at 63. Therefore, when considering whether Sutton has established the materially adverse action prong, retaliatory conduct falls within a broader scope than substantive discriminatory conduct.

"[O]ne cannot secure [Congress's intent for Title VII's antiretaliation provision] by focusing only upon employer actions and harm that concern employment and the workplace. . . . An employer can effectively retaliate against an employee by taking actions not directly related to his employment[.]" *Id.* This directive broadens the geographic scope of prohibited conduct beyond the workplace and subsumes various expressions of employer/employee conduct that fail to rise to the level of a so-called "ultimate employment action" (*i.e.*, dismissal, reduction in pay, loss of benefits, etc.). However, Title VII's antiretaliation provision protects an individual only "from retaliation that produces an injury or harm", and "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 67-68. To successfully establish a retaliation claim, a plaintiff must demonstrate her "employer's actions

14

[were] harmful to the point that [those actions] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. at 57.

Because the scope of adverse retaliatory conduct is broader than that of adverse discriminatory conduct, whenever a plaintiff successfully establishes an adverse employment action that rises to the level required by the substantive discrimination claim, they have *per se* satisfied the same showing for a retaliation claim. *See, e.g.*, *Redlin v. Grosse Point Pub. Sch. Sys.*, 921 F.3d 599, 614 (6th Cir. 2019) (holding that by making "the harder showing required for her gender discrimination claim," the plaintiff "also satisfies the third element of her *prima facie* [Title VII retaliation] case."). The inverse, however, is not true. The Court therefore examines whether Sutton has identified conduct that, while insufficient to meet the burden for substantive discrimination, might nevertheless fall within the broader scope of materially adverse actions in the retaliation context.

With respect to her retaliation claim, Sutton cites (1) Dartis' "several disciplinary investigations . . . for leave violations and changing her schedule"; (2) Dartis' "fail[ure] to approve Sutton's travel requests timely ensuring Sutton will be scrambling to get to other institutions timely [and] providing opportunity for Dartis to initiate more discipline"[5]; (3) Dartis' poor performance evaluation of Sutton, "[w]hich led to a lengthy evaluation review in which Sutton had to defend her work product"; and (4) being ostracized at work. (Doc. 18, at 18-19). Following the antiretaliation guidance refined by the Supreme Court and the Sixth Circuit, the Court finds that – although a closer call than Plaintiff's substantive discrimination claim – Plaintiff also fails to meet her burden of establishing materially adverse action for a Title VII retaliation claim.

---

5. As set forth *supra*, the Court will not consider the facts Sutton cites post-dating the discovery deadline in this case.

*Negative Performance Evaluation*

Sutton cites the 2019/2020 negative performance evaluation completed by Dartis. But the Sixth Circuit has been clear that a negative evaluation, absent some impact on an employee's job (in the form of wages, or some effect on advancement), is not a materially adverse action even in the retaliation context. *Compare, e.g., Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 290 (6th Cir. 2012) ("Generally, a negative employment evaluation does not rise to this level unless it 'significantly impact[s] an employee's wages or professional advancement.'") (quoting *James v. Metro. Gov't of Nashville*, 243 F. App'x 74, 79 (6th Cir. 2007); *with Henry v. Abbott Lab'ys*, 651 F. App'x 494, 504-05 (6th Cir. 2016) (finding material adversity where there was evidence a negative employment evaluation "renders an employee ineligible for a promotion and therefore affects her advancement potential"); *Kyle-Eiland v. Neff*, 408 F. App'x 933, 941-42 (6th Cir. 2011) ("[A] negative performance evaluation may rise to the level of an adverse action if the employee can point to a tangible employment action that she alleges she suffered or is in jeopardy of suffering because of the downgraded evaluation. In this case, the PIP may have led directly to [the plaintiff's] dismissal from CLEX.") (internal quotation omitted); *Kessler v. Riccardi*, 363 F. App'x 350, 362 (6th Cir. 2010) (finding "being excluded from career-building, albeit unfunded, grant work" sufficient to establish a question of fact regarding material adversity). Sutton has pointed to no such significant impact on her employment resulting from the negative performance evaluation which was later modified. As such, the Court finds it is not a materially adverse action.

*Disciplinary Investigations / Incident Reports*

Sutton cites Dartis' incident reports and investigations as evidence of materially adverse action. As noted, on August 5, 2020, Dartis completed two incident reports, one citing failure to

16

follow the proper call-off procedure, and one citing failure to submit leave. *See* Doc. 18-7. On September 18, 2020, Dartis completed an incident report asserting Sutton had failed to complete a task necessary for an audit of the special education files. (Doc. 17-3). And finally, on May 21, 2021, Dartis completed an incident report stating that Sutton had not completed a requested draft IEP. (Doc. 18-9). Only this final incident report resulted in a notice of written reprimand. (Doc. 15-13). The Court finds none of the cited events rise to the level of a materially adverse action individually or collectively. *See Spence v. Donahoe*, 515 F. App'x 561, 575 (6th Cir. 2013) (even where a single action may not be materially adverse "multiple incidents when taken together might dissuade a reasonable worker from making or supporting a discrimination charge.") (internal citation and quotation omitted).

The Sixth Circuit has explained that where a plaintiff "was never punished as a result of the written reprimand" and "has been unable to show any material adverse consequences resulting from the written reprimand", there is "no materially adverse employment action". *Davis v. Metro Parks & Recreation Dep't*, 854 F. App'x 707, 716 (6th Cir. 2021) (internal quotation omitted); *see also Sanchez v. Brennan*, 2021 WL 1634572, at *3 (N.D. Ohio) ("[A] letter of warning on its own is not an adverse employment action here. Some other consequence is needed."); *Leligdon v. McDonald*, 2016 WL 10590098, at *15 (N.D. Ohio) ("Threats of discipline, Reports of Contact, Letters of Counseling, Letters of Expectation, removal from or refusal to appoint to voluntary boards and committees, failure to approve official time for non-essential training, charging minimal amounts of AWOL time when the leave policy was admittedly not followed, setting general policies defining expected reasonable time frames for preparing EEOC Complaints, disagreements with supervisory positions within the chain of command, [and] restricting use of email settings that interfere with a supervisor's ability to

address issues and concerns, are not materially adverse actions under the relevant standards."); *Cotton v. City of Franklin*, 2010 WL 3521751, at *17 (M.D. Tenn.) ("The Court agrees that the alleged disciplinary action does not constitute a materially adverse action of the type that will sustain a claim for retaliation, because no reasonable employee would have found the aborted written reprimand to be adverse to the extent that it would deter a reasonable worker from making or supporting a charge of discrimination. In fact, it did not dissuade Cotton from filing another EEOC charge and lawsuit."). Other circuit courts agree.  *See Hall v. Dekalb Cnty. Gov't*, 503 F. App'x 781, 790 (11th Cir. 2013) ("Plaintiff's written counseling . . . was not materially adverse because he failed to allege that it had any significant impact on his employment."); *Lewis v. Wilkie*, 909 F.3d 858, 868 (7th Cir. 2018) (finding incidents of an employee "being falsely accused or receiving unneeded instructions" from a supervisor "may have resulted in annoyance and frustration, but . . . did not cause the kind of harm that would dissuade a reasonable employee from engaging in protected activity" where the employee "received no further discipline nor suffered any lasting detriment related to any of these incidents"); *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) ("Threats of unspecified disciplinary action do not constitute adverse actions, at least not in this context. . . . [These threats] had no effect on Poullard's compensation or career prospects. While we do not doubt that the possibility of discipline can be stressful, we have previously held that this kind of threat is not enough to support a claim for retaliation.").

However, reprimands that would normally be nonmaterial may amount to materially adverse actions when "related to a larger pattern of intimidation by constantly reprimanding [the plaintiff]." *Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013).The Sixth Circuit has also explained, in context, that selective enforcement of policies and harsher punishment for the

18

plaintiff compared to coworkers, denial of training opportunities, and a frivolous investigation were materially adverse actions. *Laster*, 746 F.3d at 732. It also holds that "more frequent disciplinary writeups of plaintiff for trivial matters and unwarranted criticism of plaintiff's work" may satisfy the "materially adverse action" element. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 570 (6th Cir. 2019). Meanwhile, actions such as "not asking plaintiff to serve as a representative at conferences, preventing plaintiff from contacting the State's licensing consultant without prior permission, prohibiting plaintiff from observing arbitration process involving her subordinates, excluding plaintiff from hiring process, requiring plaintiff to seek permission before working overtime, and preventing plaintiff from meeting with staff members outside the presence of their supervisors were "slights" that "[did] not rise to the level of a *materially* adverse employment action". *Lahar v. Oakland Cnty.*, 304 F. App'x 354, 357-58 (6th Cir. 2008).

The Sixth Circuit has further explained in a different context that "[i[t seems unlikely the fact of [an] investigation [into alleged wrongdoing] itself is sufficient to satisfy the materially adverse employment action element—rather it appears the investigation at worst is nothing more than a petty slight, minor annoyance, or simple lack of good manners." *Murphy v. Ohio State Univ.*, 549 F. App'x 315, 321 (6th Cir. 2013).

Here, Sutton testified that incident reports are not discipline (though can result in discipline). (Sutton Depo., at 58, 60, 61). She further testified that each resulted in a "question and answer" session, which is also not discipline, but can result in discipline. *Id.* at 60. And no doubt these allegations and investigations caused Sutton frustration and stress. But importantly, she has pointed to no materially adverse consequence resulting from either the incident reports, or the single written reprimand. In her own written incident reports, Sutton notes her subjective

belief that Dartis is "retaliating against me for writing reports for workplace violence," (Doc. 15-6, at 2), and Dartis is "retaliating against me for the previous EEO and her removal as my supervisor." (Doc. 18-6, at 2). These conclusory assertions fail to establish that Sutton suffered materially adverse action. Title VII's antiretaliation provision protects an individual only "from retaliation that produces an injury or harm." *Id.* at 67. To successfully establish a retaliation claim, a plaintiff must demonstrate their "employer's actions [were] harmful to the point that [those actions] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. at 57. Consistent with the caselaw cited above, the Court finds Plaintiff has not established a materially adverse action based on the incident reports, investigations, or reprimand. *See Lyons v. Mich. Dep't of Corr.* 2019 WL 1002490, at *5 (E.D. Mich.) ("Even considering these incidents together, plaintiff does not show a pattern of intimidation through constant reprimanding or that taken together would indicate these actions were materially adverse. Over the course of twenty months, plaintiff was on the receiving end of the individual defendants' conduct six times, including the issuance of the one-day suspension. He has not shown that there is an environment of constant reprimanding.").

*Ostracization*

Finally, Sutton cites her ostracization by coworkers as a materially adverse action. She testified Dartis' conduct included "telling other people not to talk to me." (Sutton Depo., at 62). She said this conduct "impact[ed] the operation of the facility and our education department[;]" describing the situation as one where she felt "ostracized by the people that [she] work[ed] with because they're afraid to talk to [her] because they don't want to be next." *Id*.

But courts have found such actions do not rise to the level of materially adverse action. *See Creggett,* 491 F. App'x 561, 569 ("Creggett's perception that [his supervisor] shunned and

avoided him is not a materially adverse action."); *Wierengo v. Akal Security, Inc.*, 580 F. App'x 364, 373 (6th Cir. 2014) (plaintiff's claims that she was "shunned and ostracized" by supervisors and co-workers and that thirteen co-workers filed a complaint against her did not "rise to the level of" adverse employment actions, where she did not allege these incidents "resulted in any sort of injury or harm to her professionally or personally") (internal quotation marks and citation omitted)); *see also Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (allegations by a plaintiff that "she was chastised by superiors and ostracized by co-workers . . . do not rise to the level of material adversity but instead fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct.") (quoting *Burlington Northern*, 548 U.S. at 68).

While Sutton's testimony indicates that her co-workers may have been chilled in their willingness to interact with her, she has not established that Dartis' conduct, and through her the Defendant, rose to the level whereby a reasonable employee would be dissuaded from making or supporting a charge of discrimination.

Although the Court has no doubt about the ongoing difficult working relationship between Dartis and Sutton, Title VII's retaliation provision does not protect against trivial harms or set forth a "general civility code for the American workplace." *Burlington Northern*, 548 U.S. at 68 (internal quotation and citation omitted). Having failed to demonstrate that she suffered a materially adverse action for purposes of a Title VII retaliation claim, Sutton has not met her burden to establish a prima facie case.[6] Therefore, her claim of retaliation cannot survive summary judgment.

---

6. The Court notes that the standard for materially adverse action is an objective, not subjective one. And the Court explicitly finds that under an objective standard, the cited actions were not "harmful to the point that [those actions] could well dissuade a reasonable worker from making

Hostile Work Environment

In her third and final cause of action, Sutton alleges Defendant's discriminatory conduct created a hostile work environment. (Doc. 1, at 6). To establish a prima facie hostile work environment case, Sutton must demonstrate that "(1) she [is] a member of a protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).[7] Defendant argues that Sutton is unable to carry her prima facie burden, specifically citing a failure to establish race-based causation. (Doc. 14-1, at 8).

"[I]t is axiomatic that on this claim, [the plaintiff] must provide a causal nexus between [her] race and the complained-of conduct." *Jordan v. City of Cleveland*, 434 F.3d 584, 596 (6th Cir. 2006). The challenge of establishing this nexus is rooted in the fact that it "presents 'an elusive factual question' that is often difficult to determine by way of direct proof." *Id.* (quoting *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004)).

> Thus, a court should not examine each alleged incident of harassment in a vacuum
> . . . . [E]ven though a certain action may not have been specifically racial in

---

or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 57. However, the Court also observes that Dartis' actions in fact did not deter Sutton from continuing to assert charges of discrimination.

7. Given the facts of the instant case, the first prong of this test appears to potentially implicate the "background circumstances" analysis required by claims of reverse race discrimination. However, the Sixth Circuit, while recognizing the issue, has not confronted the question directly. *See Goller*, 285 F. App'x at 258 n.2 ("Neither the Sixth Circuit nor its sister circuits have yet resolved whether the 'background circumstances' requirement in reverse-race discrimination cases applies to hostile-work-environment claims. . . . We need not resolve this question, however, because Smith's harassment of Goller did not rise to the level of a racially hostile work environment."). This Court also need not address whether the "background circumstances" analysis applies, as the Court agrees with Defendant's assertion that Sutton fails to establish the third prong of the prima facie test.

nature, it may contribute to the plaintiff's proof of a hostile work environment if it would not have occurred but for the fact that the plaintiff was [within a protected class].

*Jackson v. Quanex Corp.*, 191 F.3d 647, 661-62 (6th Cir. 1999). The Sixth Circuit has held out various incidents as examples of harassment that were based on race. *See, e.g.*, *Clay v. United Parcel Serv.*, 501 F.3d 695, 706 (6th Cir. 2007) (holding that the plaintiff, "the only black employee in her work area," was able to "create[] an inference sufficient to survive summary judgment[] that race was a motivating reason behind [the defendant's] behavior" based upon allegations that the plaintiff was "disciplined . . . for things for which [the defendant] did not discipline her [white] co-workers."); *Jordan*, 434 F.3d at 597 (holding "a plethora of racially offensive jokes, racist graffiti and derogatory comments," along with "isolation and segregation" were among the "indignities that Jordan faced while working at the Division.").

Sutton conclusorily asserts "Dartis' actions are wholly based on Sutton's race and while Dartis may not have made any overt comments about Sutton's race, Sutton would not have been the subject of harassment but for her race." (Doc. 18, at 20). Following *Clay*, Sutton need not cite specific instances of racially charged language or conduct, but rather can cite evidence to support an inference of racial motivation to create the causal nexus required by the prima facie test. However, Sutton has not pointed to anything in the record to establish such an inference in this case. She cites Dartis' testimony that Dartis has previously not interacted with Sutton when observing the teaching staff. (Doc. 17, at 49). But nothing in Dartis' testimony connects this conduct, either directly or inferentially, with Sutton's race. Furthermore, although Sutton testified "I'm having to do things that nobody else has to do like . . . letting [Dartis] know every time I leave the building, and nobody else has to do that[,]" the comparators she named as examples of those so differently treated were also Caucasian. (Sutton Depo., at 109-10). Finally,

Sutton has not provided evidence that establishes Dartis' treatment of her was disparate to a non-Caucasian comparator.

Having failed to establish an issue of fact regarding the causal nexus between her race and the complained-of conduct, Sutton has failed to meet the burden of the prima facie case for a hostile work environment claim based upon race. Therefore, Defendant is entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion for Summary Judgment (Doc. 14) be, and the same hereby is, GRANTED.

 s/ James R. Knepp II
UNITED STATES DISTRICT JUDGE